E-FILED
Thursday, 10 April, 2008  01:16:30 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| TANUM SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  06-3244 |
| | ) | |
| THE HOPE SCHOOL, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on The Hope Institute's Motion for Summary Judgment (d/e 10) (Motion for Summary Judgment).  For the reasons stated below, the Motion for Summary Judgment is allowed.

### FACTS

The Hope School, now known as The Hope Institute, is a school for children with developmental disabilities.[1]  From May 5, 2005, through September 19, 2006, Plaintiff Tanum Smith worked there.  Until June of 2006, Smith worked one-on-one with students as an individual instruction

---

[1]Because Defendant was sued as The Hope School, the Court will refer to it as "Hope School."

aide.  On June 9, 2006, however, Smith was involved in the second of two physical altercations with students that year.  Previously, on April 3, 2006, a student pushed Smith to the ground, struck her, and kicked her.  Smith filed an Illinois Worker's Compensation claim related to this incident.  On June 9, 2006, another student struck Smith in the mouth, chipped her tooth, and caused neck pain.   Smith again filed an Illinois Worker's Compensation claim.  She also visited a chiropractor, Dr. Bryan Taylor, who directed her to stay home from work for two or three weeks.   Smith complied, and on June 21, 2006, Dr. Taylor approved a return to work "on light duty."  Memorandum in Support of Motion for Summary Judgment (d/e 11), Undisputed Fact ¶ 14.  When Smith returned to Hope School, its Worker's Compensation Specialist assigned her to work in The Autism Project, where she performed clerical duties.  At The Autism Project, Smith had no contact with students.

On July 25, 2006, presumably as part of her worker's compensation actions, Smith underwent an independent medical examination by a Dr. Dellheimer.  On August 10, 2006, Hope School learned that, based on this examination, Smith was free to return to work without restrictions.  On August 14, 2006, however, Smith saw her primary care physician, Dr. Cara

Vasconcelles.  Dr. Vasconcelles began treating Smith on February 17, 2005. On that and several subsequent occasions, Dr. Vasconcelles treated Smith for mild anxiety.  On August 14, 2006, Dr. Vasconcelles provided Smith a note that stated: "Please excuse from work [due] to neck pain until cleared by neurologist unless light duty and not around residents." <u>Memorandum in Support of Motion for Summary Judgment</u>, Undisputed Fact ¶ 21.  Dr. Vasconcelles also referred Smith to a neurologist at the Springfield Clinic, Dr. Dave Gelber, for her neck pain.

After Smith presented Dr. Vasconcelles' note to Hope School, it transferred Smith to the dietary department or kitchen.  In this position, Smith placed labels on trays and cared for silverware.  The parties dispute the extent to which students accessed the kitchen, or dietary room, where Smith worked.  According to Hope School, while students used the hallway adjacent to the kitchen, they were not allowed in the kitchen itself.  Smith contends that approximately 30 students entered the kitchen each day to pick up food trays or carts.

On either August 22 or 23, 2006, a student approached Smith in the kitchen, and Smith complained to the Human Resources Department. Smith complained that Hope School had failed to provide her with a safe

environment, and she was leaving work.

Hope School asserts that after this incident, on August 23, 2006, it sent Smith a letter stating:

> I am assured that no children are allowed in the kitchen and since your light duty assignment is kitchen duty you should not encounter any children unless you initiate the contact.  If you need to be out of the kitchen, someone will accompany you.  To that end we expect you at work on Friday, August 25, 2006 to work in the kitchen at the Hope School.  If you fail to report for work you will be recorded as unexcused absence and after three such occurrences you will be scheduled for a pre-disciplinary meeting to pursue your termination for job abandonment.

See Memorandum in Support of Motion for Summary Judgment, Undisputed Fact ¶ 32.  Smith insists she never saw this letter before sitting for her deposition in this case.  Response to Motion for Summary Judgment, at 4 (disputing Fact ¶ 32).

On August 24, 2006, Dr. Vasconcelles received a voicemail from Smith reporting that Hope School would not allow her to work without resident contact.  In her message, Smith asked Dr. Vasconcelles whether she would qualify for disability or Family and Medical Leave Act (FMLA) leave. See 29 U.S.C. §§ 2601-54.  Dr. Vasconcelles advised her nurse to call Smith and inform Smith that "she could try."  Memorandum in Support of Motion for Summary Judgment, Undisputed Fact ¶ 51.

On Friday, August 25, 2006, Smith clocked into work at Hope School but left a few minutes later without reporting to her supervisor or the Human Resources Department.   She states that she immediately left a voicemail for Melissa Thompson, The Hope School Worker's Compensation Specialist.

On Monday, August 28, 2006, Smith requested FMLA paperwork from Jennifer Cline, The Hope School Benefits Specialist responsible for handling leave under the FMLA.  Smith asserts that she told Cline that she needed to take leave because she was depressed and taking medication related to stress problems.  Hope School asserts that Smith did not tell Cline she was taking medication for stress.

Smith also contends that Cline showed her a collection of FMLA paperwork and told her that some of it needed to be completed by her doctor.   According to Smith, Cline told her everything needed to be completed and returned to Hope School as soon as possible.  Smith told Cline she was not coming back but was going straight to Dr. Vasconcelles. Smith asserts that Cline "said okay."  Motion for Summary Judgment, Exhibit 1, Smith Deposition, at 77.  Smith also asserts that she told Cline she needed to start her leave immediately, and Cline advised her that would

be fine. Based on this conversation, Smith believed Cline had approved her request for FMLA leave. Id. at 76. Cline, however, did not consider this conversation a formal request or application for FMLA leave; she believed it indicated only that Smith was considering applying for leave. Motion for Summary Judgment, Exhibit 5, Cline Deposition, at 18-19.

The same day, August 28, 2006, Smith left the FMLA paperwork Cline gave her with Dr. Vasconcelles. Dr. Vasconcelles completed the paperwork that day. In the form entitled "Certification of Health Care Provider for FMLA Leave," Dr. Vasconcelles stated: "patient having severe recurrent muscle tension [headaches] and [right] neck & arm pain [secondary] to trauma suffered at work." Memorandum in Support of Motion for Summary Judgment, Undisputed Fact ¶ 54; Motion for Summary Judgment, Exhibit 2, Vasconcelles Deposition, Exhibit 4.

On August 29, 2006, Smith failed to report for her shift and failed to call her supervisor. The next day, Thompson sent Smith a letter stating that to prevent contact with students, the school could provide her an escort to enter and exit the building. The letter warned, however, that days Smith did not work and failed to contact her supervisor would be considered unexcused absences.

6

Smith received her paperwork back from Dr. Vasconcelles' office September 6, 2006. To Dr. Vasconcelles' description on the Certification of Health Care Provider for FMLA Leave form, Smith added the words "plus previous depression." <u>Memorandum in Support of Motion for Summary Judgment</u>, Undisputed Fact ¶ 63. She did not consult with Dr. Vasconcelles before adding this information. Smith has never been diagnosed with depression. Smith then faxed the form to Hope School.

On receipt of Smith's paperwork, Cline and Thompson noticed that the Certification of Health Care Provider for FMLA Leave form appeared altered. Cline instructed a co-worker to contact Dr. Vasconcelles' office to check whether a physician had completed Smith's paperwork. After confirming that the FMLA paperwork had been altered, Cline contacted the United States Department of Labor (DOL). A DOL representative advised that Hope School could deny Smith leave based on an alleged failure to provide timely notice and the alleged alteration of FMLA documentation.

On September 11, 2006, Cline denied Smith's request for FMLA leave. She prepared and mailed a formal Employer Response, which stated that leave was denied "because you failed to provide us reasonable notice and because you altered FMLA paperwork." <u>Memorandum in Support of</u>

Motion for Summary Judgment, Undisputed Fact ¶ 68. Cline also informed Smith of the denial over the telephone.  That same day, Dr. Gelber faxed Hope School to state that Smith had no work restrictions.

According to the Hope School Employee Handbook, an employee who misses work for three consecutive days without calling to report the absence is subject to termination.  On September 6, 2006, Hope School began disciplinary proceedings against Smith for failing to work or report her absences; Hope School contends that it began its disciplinary proceedings before receiving Smith's FMLA paperwork, but Smith has denied this statement.  Hope School sent Smith a letter that day notifying her of a pre-disciplinary meeting to be held September 12, 2006.

Smith did not attend the pre-disciplinary meeting on September 12, 2006.  Hope School rescheduled the meeting for September 14, 2006, and Smith attended on the rescheduled date.  At this meeting, Hope School informed Smith that, because she failed to report to work on August 25, 28, and 29, 2006, it was contemplating terminating her.

Smith attended a disciplinary meeting September 19, 2006.  Smith inquired about her request for FMLA leave.  Hope School informed her that it denied the request because it believed she had falsified the paperwork and

had submitted it in an untimely manner.  After Smith presented her case against termination and Cline and Thompson reported that Smith failed to work or call in August 25, 28, and 29, 2006, a Dr. Bukowski decided to terminate Smith.

On October 24, 2006, Smith filed the instant 2-count Complaint (d/e 1), which alleges that Hope School improperly denied her FMLA leave and terminated her in retaliation for exercising her rights under the FMLA and the Illinois Worker's Compensation Act.  After discovery, Hope School filed for summary judgment.

## ANALYSIS

A motion for summary judgment must be granted "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  Any doubt as to the existence of a genuine issue for trial is resolved against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Herman v. Nat'l Broad. Co., 744 F.2d 604, 607 (7th Cir. 1984).  Once the moving party has produced evidence showing that it

is entitled to summary judgment, the non-moving party must present evidence to show that issues of fact remain.  <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).  "Summary judgment is appropriately entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" <u>McKenzie v. Ill. Dept. of Transp.</u>, 92 F.3d 473, 479 (7th Cir. 1996) (quoting <u>Celotex</u>, 477 U.S. at 322).

To successfully oppose a motion for summary judgment, the nonmoving party must do more than raise a "metaphysical doubt" as to the material facts.  <u>See</u> <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 586.  Instead, he must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  <u>Id.</u> at 587 (emphasis in original) (quoting Fed. R. Civ. P. 56(e)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Id.</u>  In determining whether a genuine issue exists, courts should construe "all facts and reasonable inferences from the record in the light most favorable to . . . the non-moving party." <u>Moser v. Ind. Dept. of Corr.</u>, 406 F.3d 895, 900 (7th Cir. 2005).  Courts, however, are "not required to draw

every conceivable inference from the record. [They] need draw only reasonable ones." Tyler v. Runyon, 70 F.3d 458, 467 (7th Cir. 1995) (internal quotation marks omitted).

I.   COUNT I

In Count I, Smith alleges that Hope School violated her rights under the FMLA. Under the FMLA, an eligible employee may take unpaid leave for up to 12 weeks during any 12-month period for a number of specific reasons, including a serious health condition that renders the employee unable to perform her job. 29 U.S.C. §§ 2611(11), 2612(a)(1). "The FMLA makes it unlawful for an employer to interfere with an employee's attempt to exercise any FMLA rights. . . . It also forbids an employer from retaliating against an employee who exercises FMLA rights." Burnett v. LFW Inc., 472 F.3d 471, 477 (7th Cir. 2006) (citing 29 U.S.C. §§ 2615(a)(1) & (b)). Smith has brought both an interference and a retaliation claim.[2] As discussed below, however, Smith cannot succeed on

---

[2] Count I is titled "FMLA Retaliation," but in paragraph 10, the Complaint alleges, "The Hope School has willfully violated the terms of the FMLA in that it intentionally deprived Smith of her rights under the FMLA." Complaint, Count I, ¶ 10. The parties have interpreted this as an FMLA interference claim. See Memorandum in Support of Motion for Summary Judgment, at 16; Plaintiff's Memorandum of Law in Opposition to Summary Judgment, at 1. The Court agrees that the Complaint includes an interference claim.

either claim.

A.    FMLA Interference Claim

A plaintiff succeeds on an FMLA interference claim by showing that the defendant deprived plaintiff of an FMLA entitlement, without regard for the defendant's intent.  Burnett, 472 F.3d at 477.  The plaintiff must establish that: (1) plaintiff was eligible for FMLA protection; (2) plaintiff's employer was covered by the FMLA; (3) plaintiff was entitled to leave under the FMLA; (4) plaintiff provided sufficient notice of plaintiff's intent to take leave; and (5) defendant denied plaintiff's FMLA benefits to which plaintiff was entitled.  Id.  Hope School concedes that Smith can establish the first and second prongs.  Prongs 3-5 are at issue, but because Smith cannot establish the third prong, the Court does not reach the parties' arguments on the remaining issues.

An employee is entitled to FMLA leave if she is afflicted with a "serious health condition," and that condition leaves her unable to perform the functions of her job.  29 U.S.C. § 2612(a)(1)(D).  A "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves -- (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."

29 U.S.C. § 2611(11).  Continuing treatment by a health care provider can include examinations and evaluations over an extended period of time.  29 C.F.R. § 825.114.  Moreover, incapacity can be episodic rather than continuous.  Id.

Viewing the evidence in the light most favorable to Smith, a trier of fact could conclude that Smith suffered an anxiety-related condition, for which Dr. Vasconcelles was treating her, that prevented her from performing a job at which she might have contact (even accidental) with Hope School residents.  Moreover, in its summary judgment briefing, Hope School does not directly contest Smith's claim that she suffered a serious medical condition.  Instead, Hope School argues that whatever Smith's condition, her alteration of the health care provider certification form nullified any entitlement she may have had.

The FMLA allows an employer to require an employee to submit certification of her condition from a health care provider.  29 C.F.R. § 825.305(a).  On receipt of Smith's certification, Thompson and Cline suspected that Smith had added the words "plus previous depression," and Cline contacted Dr. Vasconcelles' office to find out.  The FMLA regulations did not allow Cline to do so.  See 29 C.F.R. § 825.307; Darst v. Interstate

Brands Corp., 512 F.3d 903, 909 (7th Cir. 2008). Instead, when an employee submits a complete certification signed by a health care provider and the employer has doubts regarding its authenticity, its only recourse is to have a second health care provider contact the employee's health care provider, with the employee's permission, to discuss the certification. 29 C.F.R. § 825.307. That was not done here.

Yet, while other statutes may provide Smith recourse for Hope School's violation, the FMLA provides no remedy unless the action interfered with, restrained, or denied Smith's exercise of her rights under the FMLA. Darst, 512 F.3d at 910. If Hope School had asked Smith's permission to contact Dr. Vasconcelles and Smith had refused, undoubtedly Hope School would have denied her FMLA leave request. See Dowell v. Indiana Heart Physicians, Inc., 2004 WL 3059788, at *9 (S.D. Ind. Dec. 22, 2004). If she had granted permission, Hope School would have received the same information it obtained through its unauthorized phone call: that Dr. Vasconcelles did not certify that Smith previously suffered from depression. Hope School did not base its FMLA denial on the fact that Dr. Vasconcelles did not diagnose Smith with depression, however; it based its denial, in part, on its belief that she had falsified the certification form. The

issue is whether Hope School was justified in denying Smith's FMLA leave request based on her alteration of the form, even if Hope School also knew that the rest of the certification form was authentic.

The Court holds that it was. The parties point to no case exactly on point, and the Court's research did not identify one, but numerous analogous cases exist. Courts have held that employers are justified in denying employee FMLA leave requests where the employees submitted false forms that contained no authentic support for their leave requests. E.g., Fuller v. Alliant Energy Corp. Svs., Inc., 456 F.Supp.2d 1044, 1073 (N.D. Iowa 2006) (citing 29 C.F.R. § 825.311(b) ("If the employee never produces the certification, the leave is not FMLA leave.")).

Further, numerous cases have held that falsification of an FMLA certification form constitutes grounds for termination. E.g., Kariotis v. Navistar Int'l Transp. Corp., 131 F.3d 672, 681 (7th Cir. 1997); Blackburn v. Potter, 2003 WL 1733549, at *8 (S.D. Ind. March 31, 2003); see also 29 C.F.R. § 825.312(g) ("An employee who fraudulently obtains FMLA leave from an employer is not protected by the FMLA's job restoration or maintenance of health benefits"); Salgado v. CDW Computer Centers, Inc., 1998 WL 60779, at *7 (N.D. Ill. Feb. 5, 1998) (assuming that the

regulation permitting employers to terminate employees who previously obtained leave fraudulently provides grounds to deny FMLA rights "even if the fraud was not successful in obtaining leave.").

Indeed, courts have concluded that alteration of a certification form provides grounds for termination even where the unaltered form would have entitled the employee to FMLA leave.  For example, in <u>Yasmeen v. Hospira Inc.</u>, an employee was entitled to FMLA leave to care for her husband. <u>Yasmeen</u>, 2007 WL 3254923, at *3 (D. Utah Nov. 2, 2007).  After her husband's physician filled out the certification form, however, the employee was confused regarding the dates he listed for the term of leave necessary. <u>Id.</u> at *2.  The physician was unavailable to correct the confusion, so she had his resident change the form.  <u>Id.</u>  The change provided her a longer period of leave than the physician intended.  <u>Id.</u>  While the employee had an FMLA-qualifying reason for the shorter period of leave, the court agreed with the employer that whether or not the employee came back to work early, "'you now have what appears to be a dishonest employee.'"  <u>Id.</u> at *4. Thus, the employee's termination did not violate the FMLA.  <u>Id.</u>

Given these cases, the Court is convinced that falsification of a certification form is grounds for denial of leave where an unaltered form

would not have supported leave.  More importantly, however, the Court is persuaded that if termination is an appropriate response to alteration of a certification form, even where an unaltered form would have supported leave, then denial of the leave request must be consistent with the FMLA. An employee who alters a certification form without her health care provider's permission is not entitled to FMLA leave, regardless of whether the unaltered form would have been sufficient.

Before moving on, however, the Court also must address Smith's contention that if Hope School questioned the validity of Dr. Vasconcelles' certification, it could have requested a second opinion.  The FMLA provides:

> In any case in which the employer has reason to doubt the validity of the certification . . . the employer may require, at the expense of the employer, that the eligible employee obtain the opinion of a second health care provider . . . .

29 U.S.C. § 2613(c)(1).  Similarly, under the regulations:

> An employer who has reason to doubt the validity of a medical certification may require the employee to obtain a second opinion at the employer's expense.  Pending receipt of the second (or third) medical opinion, the employee is provisionally entitled to the benefits of the Act . . . .

29 C.F.R. § 825.307(a)(2).  The fact that these provisions describe a process for obtaining a second medical opinion makes clear that the word "validity"

applies only where the employer suspects that the health care provider's opinion is wrong, not that it is inauthentic.  Harcourt v. Cincinnati Bell Telephone Co., 383 F.Supp.2d 944, 954 (S.D. Ohio 2005).

Moreover, "[t]he few courts to analyze the language of that provision have found that the request for a second opinion is permissive, not mandatory." Darst, 512 F.3d at 911 (citing Rhoads v. FDIC, 257 F.3d 373, 385-86 (4th Cir. 2001); Stekloff v. St. John's Mercy Health Sys., 218 F.3d 858, 860 (8th Cir. 2000)).  Additionally, even if Hope School had been required to seek a second opinion, again the FMLA provides no remedy for the violation unless it interfered with, restrained, or denied Smith her rights under the FMLA.  Id.  Here, Hope School did not deny Smith FMLA leave because it believed she did not suffer from a stress-related anxiety condition as Dr. Vasconcelles had diagnosed; it denied her leave because it believed she had altered the certification form and failed to provide sufficient notice. Hope School's failure to seek a second opinion did not affect Smith's FMLA rights.

B.     FMLA Retaliation Claim

Smith's alteration of her certification form is also fatal to her FMLA retaliation claim, in which she alleges that Hope School terminated her for

18

requesting FMLA leave.  To succeed on an FMLA retaliation claim, a plaintiff can proceed under the direct or indirect methods of proof.  Smith concedes that the indirect method of proof, requiring a plaintiff to prove that similarly situated employees who did not request FMLA leave were treated more favorably, is not applicable here.  See Burnett, 472 F.3d at 482.  Thus, she must proceed under the direct method.

Under the direct method, a plaintiff must show that the defendant intended to punish plaintiff for plaintiff's protected activity.  King v. Preferred Technical Group, 166 F.3d 887, 891 (7th Cir. 1999).  She establishes a prima facie case of retaliation by presenting evidence of a statutorily protected activity, an adverse employment action, and a causal connection between the two.  Haywood v. Lucent Technologies, Inc., 323 F.3d 524, 531 (7th Cir. 2003).  Even at summary judgment, however, a plaintiff who offers evidence of the defendant's discriminatory intent is not guaranteed a trial, because the defendant has the opportunity to offer contradictory evidence.  Burnett, 472 F.3d at 481.  If a defendant offers unrebutted evidence that it would have treated a plaintiff the same way absent discriminatory intent, it is entitled to summary judgment.  Id. ("the case must be tried unless the defendant presents unrebutted evidence that

he would have taken the adverse employment action against the plaintiff even if he had had no retaliatory motive.").

It should be noted that Hope School has *not* argued that it terminated Smith for falsifying her certification form.  It argues that it terminated Smith for missing three consecutive days without explanation.  Thus, while the above analysis demonstrates that Smith's falsification of the certification form would have sufficed as a non-discriminatory reason for terminating Smith, the Court will not consider that possibility in analyzing her retaliation claim.

Nonetheless, Smith cannot succeed here.  Because she cannot show that she was engaged in a statutorily protected activity, she cannot get past the first hurdle.  While requesting FMLA leave undoubtedly is statutorily protected, submitting a false certification form as part of that request cancels whatever protection otherwise applied.  <u>Rhym v. Southeastern Pa. Transp. Auth.</u>, 2006 WL 2038602, at *4 (E.D. Pa. July 20, 2006) (holding that submission of a fraudulent FMLA certification form is not a statutorily protected activity); <u>Loomis v. Honda of Am. Mfg., Inc.</u>, 2003 WL 133264, at *5 (S.D. Ohio Jan. 6, 2003) ("The Court concludes that Plaintiff did not avail herself of a protected FMLA right because she submitted a falsified

20

Certification of Health Care Provider form."); see also Gay v. Gilman Paper Co., 125 F.3d 1432, 1436 (11th Cir. 1997) ("When notice of a possible serious medical condition is deliberately withheld and false information is given, it cannot be said that an employee has been terminated in violation of the FMLA."); McClain v. McDonald's Corp., 2007 WL 210440, at *6 (E.D. Pa. Jan. 25, 2007) (holding that an employee who took leave to care for her father during an operation that in the end he never had "was not engaged in statutorily protected activity" regardless of whether she initially believed he would have the surgery). Thus, as a matter of law, Smith cannot establish a case for FMLA retaliation.

## II.   COUNT II

Smith concedes that she cannot present sufficient evidence to establish that Hope School terminated her in retaliation for filing claims under the Illinois Worker's Compensation Act. Plaintiff's Memorandum of Law in Opposition to Summary Judgment (d/e 14), at 1 n.1. Thus, the Court grants summary judgment in favor of Hope School and against Smith on Count II of the Complaint.

THEREFORE, for the reasons stated above, The Hope Institute's Motion for Summary Judgment (d/e 10) is ALLOWED. The Court enters

summary judgment for Hope School and against Smith on both counts.  All

pending motions are denied as moot.  This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:   April 10, 2008

FOR THE COURT:

_____ s/  Jeanne E. Scott _____
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE